USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1480  UNITED STATES, Appellee, v. GEORGE PERRY, A/K/A KING ANIMAL, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Mary M. Lisi, U.S. District Judge] ____________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ ____________________ John F. Cicilline on brief for appellant. _________________ Sheldon Whitehouse, United States Attorney, and Gerard B. ____________________ __________ Sullivan, Assistant United States Attorney, on brief for appellee. ________ ____________________ June 25, 1997 ____________________ SELYA, Circuit Judge. Defendant George Perry has SELYA, Circuit Judge ______________ appealed an order finding him guilty of criminal contempt. See 18 U.S.C. 401; Fed. R. Crim. P. 42(a).1 Perry, already 1 ___ incarcerated, was sentenced to 90 days' imprisonment to be served in isolated confinement. Perry unsuccessfully sought, both in the district court and in this court, to stay this order pending his appeal. Instead, we issued an expedited briefing schedule and we now affirm the judgment of contempt. I. Perry, a/k/a "King Animal," was recently on trial in the United States District Court in Rhode Island before Judge  ____________________ 1Section 401 provides: 1 A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as -- (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command. Rule 42(a) states: A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record. -2- Lisi in a multiple defendant, multiple count case. Perry was charged, inter alia, with racketeering. See 18 U.S.C.  ___ 1962(c). Some of the underlying criminal activities alleged included murder, 18 U.S.C. 1959(a)(1), conspiracy to commit the murders of several individuals, 18 U.S.C. 1959(a)(5), carjacking, 18 U.S.C. 2119(3), and use of a firearm during and in relation to a crime of violence, 18 U.S.C. 924(c). The trial began on January 21, 1997, and lasted 44 days. On April 3, 1997, which was day 40, the government began its closing argument. After roughly two hours of the government's summation, at about 12:15 pm, Perry's counsel passed a note to Judge Lisi informing her that Perry wished to use the restroom. Judge Lisi interrupted the government's closing argument and called both counsel to the bench. Government counsel informed her that he had about five to ten additional minutes of argument. Judge Lisi told Perry's counsel to tell Perry that proceedings would end in about five to ten minutes. Counsel did so. As government counsel resumed his argument, Perry stood up, turned his back to the jury, unzipped his pants, and urinated on the carpet. Perry was immediately removed from the courtroom by the marshals. The jury was excused. Perry was then returned to the courtroom and informed by Judge Lisi that his behavior was contemptuous. Judge Lisi also related that, after an earlier outburst (not otherwise described) during jury -3- selection in January, she had warned Perry that if he could not conduct himself in a proper manner, he would watch the remainder of the proceedings from the cellblock. Perry's counsel was allowed to address the court. He stated that during the ten minutes prior to his passing of the note to the bench, Perry had twice informed him that he needed to use the restroom, the second time in a more urgent manner. Counsel passed the note to the bench upon Perry's third importuning. When counsel returned from the sidebar and informed Perry that a recess would not occur until the government had concluded its closing argument, Perry stated to counsel: "There's nothing I can do." Perry then relieved himself on the carpet. Counsel moved for a mistrial due to his client's conduct and the court's announced intention to exclude Perry from the courtroom, contending that, in the circumstances, it was now virtually impossible for Perry to get a fair trial. Government counsel opposed the request. Perry's codefendants moved for mistrials as well, and, alternatively, sought severance, adding that the jury may have seen the marshals draw batons and put handcuffs on all the defendants as they sought to maintain security while others removed Perry from the courtroom. Judge Lisi denied the motions for mistrial or severance, ordered Perry removed from the courtroom for the -4- remainder of the government's summation, and stated that she would deal with him after the noon recess. When the jurors returned, the court instructed them to take no adverse inference from Perry's conduct, from the actions of the marshals in securing Perry, or from Perry's absence from the courtroom. Government counsel then concluded his argument, which took approximately five minutes. Perry watched this portion of the government's summation on a closed circuit television system from the courthouse cellblock. He also had available a direct telephone line to his counsel. The court recessed for lunch after government counsel had concluded. That afternoon, Judge Lisi convened a session with Perry and all counsel in her courtroom, but without the presence of the jury. She labelled this as an opportunity to permit Perry and his counsel to advise her whether Perry wished to return to the courtroom and whether he believed himself capable of appropriate behavior. Perry apologized and stated that he would maintain himself in a more appropriate manner. Judge Lisi informed Perry that she would permit him to remain as long as he conducted himself in a decorous fashion. When a codefendant's counsel objected to Perry's presence in the courtroom as prejudicial to his client in light of Perry's outrageous conduct and the government's prosecuting theory that all the defendants had acted in concert regarding the -5- charged crimes, Judge Lisi responded that Perry "has a right to be present during the proceedings so long as he behaves himself." Defense counsel then began their closing arguments, which continued through the next day (Friday, April 4). The government's rebuttal and the court's instructions to the jury occurred on Monday, April 7. These proceedings transpired with Perry in the courtroom and without further incident. The jury began deliberation on the afternoon of April 7, continued deliberating on April 8 and 9, and rendered verdicts on April 10.2 2 On April 10, Judge Lisi held a hearing at which the following colloquy occurred: THE COURT: Mr. Perry, would you stand up. Mr. Perry, on April 3rd, just a few days ago, you behaved with contempt toward this Court. I need not say again what that behavior consisted of. At the time, I told you that your behavior was in contempt of this Court and in deliberate and willful defiance of my order that you wait a few moments until the Government completed its closing arguments.  ____________________ 2Some of the defendants were found guilty on all counts 2 with which they were charged; others received mixed verdicts. As for Perry, he was convicted of racketeering, conspiracy to commit racketeering, the murder of Jose Mendez, conspiracy to murder two other individuals, carjacking, and two counts of using a firearm during and in relation to a crime of violence. He was acquitted on a charge related to the murder of Temujin Vandergroen. None of the defendants has yet been sentenced. -6- At this time, I'm advising you that you are in criminal contempt of this Court. I think I told you that on April 3rd. I permitted you to return, because you promised to behave yourself and you did behave yourself. However, your behavior was so outrageous and so despicable that in order to restore the authority and dignity of this Court, I feel I must impose a punishment. Before I do so, is there anything you want to say in your own behalf? DEFENDANT PERRY: No. Counsel for Perry was permitted to address the court and raise arguments in Perry's behalf. Judge Lisi then issued a "certificate of contempt and order." In accordance with Rule 42(a), the certificate recited the facts outlined above and confirmed both that the judge saw the conduct constituting the contempt and that it was committed in the actual presence of the court. She sentenced Perry to 90 days' isolated confinement.3 On appeal, Perry raises two issues (both of 3 which were preserved below). II-A. Perry contends that he could not be sentenced for contempt on April 10 once he had accepted and complied with  ____________________ 3According to the government, some of the crimes of 3 conviction carry mandatory life sentences and Perry faces the "near certainty of life imprisonment." Judge Lisi may well have ordered that the contempt sanction be served in isolated confinement so that the conviction for criminal contempt will carry some punitive effect. In all events, Perry has not challenged the isolated confinement aspect of the criminal contempt order. -7- the court's offer of an opportunity to purge himself on April 3. This contention proceeds from Perry's assumption that Judge Lisi's permitting Perry to return to the courtroom for the remainder of the trial proceedings (defense closing and jury charge) was a purge of his contempt and ended the matter. Nothing in the record, however, indicates that Judge Lisi shared this understanding that the banishment from the courtroom for the remaining five minutes of the government's summation was punishment at all -- its seems more in the nature of a step needed to ensure the orderly progress of the trial -- let alone that the exclusion sufficed as the full extent of punishment for Perry's contemptuous behavior. Moreover, "purge" is a term more appropriately associated with civil, not criminal, contempt.4 Although 4 certain court orders might contain indicia of both civil and criminal contempt -- for example, when a contemnor refuses to testify in an ongoing trial or grand jury proceeding, a judge might craft a determinate sentence of incarceration with an incentive of earlier release if the contemnor decides to comply with the order to testify, see, e.g., United States v. _________ _____________  ____________________ 4The term "purge" is not uttered by the court in any part 4 of the record before us. Counsel suggests that Judge Lisi used the term "purge" at an (unrecorded) bench conference on April 3. He referred to his understanding at the April 10 proceeding but Judge Lisi did not respond. We do not deem the matter worth pursuing; even if the court did use the word "purge," it was not reasonable for Perry to assume that the court thereby intended to foreclose a criminal contempt sanction. -8- Winter, 70 F.3d 655, 660-65 (1st Cir. 1995), cert. denied, ______ _____________ 116 S. Ct. 1366 (1996) -- the paradigmatic civil contempt sanction is coercive, designed to exact compliance with a prior court order. "[I]mprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character." Gompers _______ v. Bucks Stove & Range Co., 221 U.S. 418, 442 (1911). The ________________________ contemnor is confined indefinitely with release dependent on "purging" the contempt by complying with the order. Punishment for criminal contempt, on the other hand, is punitive and imposed to vindicate the authority of the court. "Purging" is neither permitted nor possible. "When a contempt involves the prior conduct of an isolated, prohibited act, the resulting sanction has no coercive effect. '[T]he defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense.'" International Union, United Mine Workers of Am. v. Bagwell, _________________________________________________ _______ 512 U.S. 821, 829 (1994) (quoting Gompers, supra). _______ _____ It is a misreading of what actually transpired to suggest that Judge Lisi was permitting Perry to purge himself of contempt by giving him an opportunity to apologize and to agree that he would behave more appropriately in the courtroom. Judge Lisi allowed Perry to return to the courtroom for the remaining proceedings because she was -9- sensitive to Perry's right (conditioned on good behavior) to be present at his trial proceedings. The court's recognition of this right does not inhibit the right to punish behavior committed in open court that is so obvious an affront to the dignity of the court. II-B. Perry contends that the summary contempt procedure of Rule 42(a) was unavailable to the court because the court's action in delaying the imposition of sentence was evidence that immediate punishment was not essential. If immediate punishment is not necessary, Perry argues, then the procedures outlined in Rule 42(b) -- in counsel's words, "a full fledged hearing," with concomitant notice and time for the preparation of a defense -- is required by the Due Process Clause and the Sixth Amendment. Both the Supreme Court and this court previously have rejected such an argument. See Sacher v. United States, 343 ___ ______ _____________ U.S. 1, 11 (1952); Gordon v. United States, 592 F.2d 1215, ______ _____________ 1218 (1st Cir. 1979); see also United States v. Vachon, 869 ________ _____________ ______ F.2d 653, 660 (1st Cir. 1989) (explaining that, in Sacher, ______ the Court "said that 'summary' does not need to mean 'immediate'"). Perry's suggestion that these cases are distinguishable is not persuasive. Perry's contemptuous conduct occurred in the midst of the final phase of his trial. The court did not forgo its authority to use summary -10- process by awaiting the completion of this final phase before imposing sentence for the direct contempt that occurred in the court's presence. -11- III. Perry urinated on the carpet in open court and in plain view of Judge Lisi. The court afforded Perry the right of allocution. He declined. In then concluding that Perry's conduct was "in deliberate and willful defiance," the judge necessarily rejected any suggestion that he had no control over nature's call. We need go no further. We review a Rule 42(a) order of criminal contempt for abuse of discretion, and we review the court's underlying factual findings for clear error. See ___ Winter, 70 F.3d at 659. We see neither here. As Chief ______ Justice Burger wrote: Where a court acts immediately to punish for contemptuous conduct committed under its eye, the contemnor is present, of course. There is then no question of identity, nor is hearing in a formal sense necessary because the judge has personally seen the offense and is acting on the basis of his own observations. Groppi v. Leslie, 404 U.S. 496, 504 (1972). So it is here. ______ ______ The order of criminal contempt is summarily affirmed. ________________________________________________________ See Loc. R. 27.1. ___ -12-