**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 25 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DERRICK R. PARKHURST,

      Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF
EDUCATION,

      Defendant-Appellee.

No. 00-8013
(D.C. No. 94-CV-219)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **PORFILIO**, and **LUCERO**, Circuit Judges.

After examining the briefs and appellant record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This appeal calls upon us to determine the validity of an order of the district court finding *pro se* litigant, Derrick R. Parkhurst, in criminal contempt and sentencing him to 90 days' incarceration. We conclude Mr. Parkhurst's conduct was contumacious, and the penalty summarily imposed by the court is affirmed.

While serving a life sentence at the Wyoming State Penitentiary, Mr. Parkhurst brought this *pro se* action against the Department of Education in August 1994. Pretrial motions and discovery consumed five years, but the case was finally set for trial on January 18, 2000. Six days before trial, after already having a previous trial date vacated at his request, Mr. Parkhurst filed another motion to reschedule trial on the ground he might be "professionally evaluated" in connection with an attempted escape charge at the Wyoming State Penitentiary. In its order entered the next day, the court discounted the validity of Mr. Parkhurst's claim. Plaintiff was transported to Casper for the trial. After calling the case for a bench trial, the court asked Mr. Parkhurst if he had any testimony, to which Mr. Parkhurst answered, he was not ready to proceed to trial, claiming he did not "have any of [his] notes or anything."

When asked by the court why he did not bring his "notes" when he left for court, Mr. Parkhurst stated, "[b]ecause I didn't know where I was going." This response prompted the court to ask, "Are you telling me you didn't have a clue, when you were being brought to Casper, that you were coming up here for this trial? You knew the date of the trial, didn't you?" Mr. Parkhurst replied that he knew about the trial date, but when

he was taken from the penitentiary, he thought he was "going to Evanston" for a "mental evaluation." When the court asked who ordered the "mental evaluation," Mr. Parkhurst replied, "the county judge down in Rawlins."

Obviously disturbed by this turn of events, the court stated:

I'm counting to ten slowly. Mr. Parkhurst, you better be telling me the truth, [be]cause if you're not you're going to get the butt-blistering of your life from me. I give a verbal tongue lashing like none you've ever had. If I find out you're lying to me, I'll hold you in criminal contempt of court.

Mr. Parkhurst then responded, "You're welcome to." A brief exchange ensued in which the court attempted to gain control of what the record clearly indicates was the deterioration of the courtroom decorum. During this exchange, Mr. Parkhurst said to the court, "to hell with you," and refused to stand to address the bench. Finally, order was restored after a marshal stood behind Mr. Parkhurst and he rose to his feet.

The court then asked, "[A]re you telling me you did not believe you were to be here for trial today? Is that your comment to me?" "No. I didn't think I was coming up here for trial. I thought I was going to Evanston," answered Mr. Parkhurst.

Stating he intended to "go to the bottom of this," the court ordered Mr. Parkhurst returned to detention in the courthouse and directed the marshal to contact state prison officials to learn whether Mr. Parkhurst had been told he was going to Casper for trial. The court recessed the proceedings, but appointed counsel to advise Mr. Parkhurst of the possibility of a direct criminal contempt and what to do to avoid imposition of the penalty.

Later that day, the court reconvened and heard prison officers testify by telephone that Mr. Parkhurst had been told on January 13 he was being transported to Casper. Although there was some uncertainty over whether Mr. Parkhurst was specifically instructed to take his notes for trial, each prison official related his conclusion Mr. Parkhurst knew he was going to Casper and not Evanston. The officers who transported Mr. Parkhurst and their lieutenant stated when Mr. Parkhurst was told he was going to Casper for trial, he refused to go. After the lieutenant advised the officers Mr. Parkhurst had no choice in the matter because the district court had issued a writ of *habeas corpus ad testificandum*, they proceeded to deliver Mr. Parkhurst to Casper.

Although Mr. Parkhurst was not given the opportunity to call his own witnesses, he testified and stated the officers had lied. When given the opportunity to cross-examine those officers, Mr. Parkhurst declined, admitting he knew he was told he was going to Casper, but was not told the reason for the trip. He claimed he was confused because he had recently suffered a stroke which required him to have a mental competency evaluation at the Wyoming State Hospital in Evanston.

At that point, the Assistant United States Attorney who was representing the civil defendant addressed the court recounting the delays counsel had encountered trying to get the civil case to trial. She added:

> [It] appears that he's toying with the system, and it's costing considerable time and expense. Today is the day when he is supposed to present his case; and since he's not prepared to do that, it would be the defendant's position that the case should be dismissed with prejudice by default.

That motion was taken under advisement.[1]

Invited to speak before the court's ruling, Mr. Parkhurst said he was not sure what was said that morning but insisted he was not toying with the court. He apologized, as did counsel who had been appointed earlier in the day to advise Mr. Parkhurst in the contempt matter. Counsel also asked the court to be lenient.

From the bench, the court found Mr. Parkhurst in contempt, stating: "As for the *direct* criminal contempt, sir, it is the sentence of the Court that you be confined in a United States Bureau of Prisons facility to serve a term of 90 days for contempt." (emphasis added). In a subsequent written order, the court particularized its findings and held Mr. Parkhurst had delayed the civil trial by "refusing to stand when addressing the Court and otherwise refusing the instruction of the Court," and by making "derogatory comments to the Court, including telling the Court 'to hell with you.'" On the basis of these findings, the court concluded Mr. Parkhurst committed a criminal contempt "pursuant to Fed. R. Crim. P. 42(a)," and imposed sentence under 18 U.S.C. § 401 of ninety days to be served consecutive to his life term.

On appeal Mr. Parkhurst challenges the validity of the sentence, contending the flaws in this conviction are threefold. First, although the court found Mr. Parkhurst's

---

[1]From the record before us, it appears the district court did not rule on this motion. Instead, on March 19, 2001, the court dismissed the action on the grounds of mootness. The order of dismissal was transmitted to this court and made part of our record on March 22, 2001.

behavior obdurate, it did not take immediate action and even alluded to the possibility Mr. Parkhurst could remedy his situation by improving his conduct. Second, he contends the court acted as both prosecutor and judge, eliciting testimony from prison officers, and deciding, without allowing Mr. Parkhurst to call witnesses, he had lied. Third, if Fed. R. Crim. P. 42(b) was the basis for the hearing, Mr. Parkhurst contends due process then attached to the proceeding, requiring he be given notice, an opportunity to prepare a defense and to call witnesses. Additionally, he maintains despite the court's knowing about an imminent mental competency evaluation, it proceeded, without benefit of that record, to determine Mr. Parkhurst's competence. Given the government's burden to prove Mr. Parkhurst acted willfully and with specific intent to flaunt the court's power, he urges the court erred.

Dealing with these issues first requires a correct posturing of the case. What we have before us is truly a hybrid containing some of the aspects of criminal contempt and some of the aspects of civil contempt. Further complicating the issues, those parts of this case containing the elements of criminal contempt also boast of both direct and indirect contempt. We must, then, establish the nature of all these elements.

First, "criminal contempt [is] 'a crime in the ordinary sense' and requires that the contemnor be afforded fundamental procedural safeguards." ***Young v. United States***, 481 U.S. 787, 795-96 (1987). However, those procedures for prosecuting a criminal contempt differ depending on whether the conduct constitutes direct or indirect contempt. ***Id.*** at

798. Direct criminal contempt consists of contumacious conduct committed in the presence of the court. Fed. R. Crim. P. 42(a). An indirect criminal contempt consists of contumacious conduct directed to the court but not committed in its presence. Chief Justice Burger has observed that indirect criminal contempt is "intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice," even if not delivered disrespectfully. *United States v. Wilson*, 421 U.S. 309, 315-16 (1975). Direct criminal contempt is not so limited. "All that is necessary is that the judge certify that he 'saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court.'" *Id.* at 315, quoting Fed. R. Crim. P. 42(a).

The initial distinction between direct and indirect criminal contempt, then, is whether the contumacious acts are committed before the court. While direct contempt can be dealt with summarily by the offended court, *In re Oliver*, 333 U.S. 257, 275 (1948); *Bloom v. Illinois*, 391 U.S. 194, 203-04 (1968), Fed. R. Crim. P. 42(a); indirect contempt must be proved through the testimony of third parties or a contemnor. Moreover, the conduct giving rise to an indirect contempt does not "threaten[] a court's immediate ability to conduct its proceedings." *International Union, UMWA v. Bagwell*, 512 U.S. 821, 826 (1994). For that reason, indirect criminal contempt may not be punished summarily and "more normal adversary procedures" are required. *Young*, 481 U.S. at 798. In addition, if the contumacious conduct "involves disrespect to or criticism

of a judge, that judge is disqualified from presiding," at the contempt hearing unless the accused consents.  Fed. R. Crim. P. 42(b*)*.

Finally, civil contempt consists of contumacious conduct which results in detriment to another party in a civil proceeding.  "[T]he paradigmatic civil contempt sanction is coercive, designed to exact compliance with a prior court order," ***United States v. Perry***, 116 F.3d 952, 954 (1st Cir. 1997), in which correction usually takes the form of granting appropriate relief to the injured party.  By contrast, punishment for criminal contempt is imposed to vindicate the court's dignity.

After viewing the record, we believe the district court recognized the different forms of contempt.  Even though it did not declare its understanding of these  distinctions in specific terms, the court properly made dispositions of the case nonetheless.

From the outset, we must disagree with Mr. Parkhurst's  basic premise.  He implies that because the court heard testimony to determine whether he had lied to the court, the proceeding had to involve indirect criminal contempt.  While the progression of events in the district court lends facial credence to the argument, we believe the ultimate determination turns upon the district court's definition of the contumacious conduct.  Although we recognize our selection of this analytical course is unusual, it is necessary to put this singular case into proper focus.

The district court, in its obvious and understandable frustration with Mr. Parkhurst, was not absolutely clear in the rulings made during the course of events, and rulings it

could have made consistent with the facts were not made. Yet, a fair look at what actually occurred overcomes the record deficiencies.

When that look is taken, we immediately see the holding of Mr. Parkhurst in criminal contempt was not based upon his lie, which was the subject of the afternoon hearing, but upon his verbal abuse of the court and his manifest disdain for the court's authority earlier in the day. Furthermore, it can be seen from the record the court's concern over whether Mr. Parkhurst truthfully explained his inability to proceed to trial was directed not to the dignity of the court but to the civil defendant's right to a final disposition of that proceeding. Indeed, addressing the government's motion to dismiss, the court stated:

> I'm obligated to recognize the degree of actual prejudice to the [government], the amount of interference with the judicial process, which in this case appears substantial; and the culpability of the litigant which, given the testimony of the officers of the Wyoming State Penitentiary, in the opinion of this Court is compelling.

We thus believe the district court had differentiated in its mind between the disrespectful and defiant conduct committed in its presence and the conduct which resulted in the detrimental attempt to further delay the progress of the civil trial. In that differentiation, the court made apparent the grounds for the criminal contempt were not connected to the latter attempt.

Within that framework, then, we believe the telephone hearing undertaken by the court was not governed by the requirements of Rule 42(b) because the court was not

attempting to determine whether Mr. Parkhurst had committed a criminal contempt by lying.  Notwithstanding his own statement, "[i]f I find out you're lying to me, I'll hold you in criminal contempt of court," it is evident, even after finding Mr. Parkhurst lied, the court concluded the lie was not grounds for criminal contempt.  Indeed, the written order in which the court found Mr. Parkhurst in criminal contempt is totally silent on the issue of the lie.

Having properly postured the case, we turn to the substance of the appeal and whether the court correctly punished Mr. Parkhurst for a direct criminal contempt.  We review a district court's summary order of criminal contempt for an abuse of discretion and its underlying factual findings for clear error.  *Perry*, 116 F.3d at 957.  "Summary contempt procedures should be employed only after careful consideration and with good reason."  *United States v. Engstrom*, 16 F.3d 1006, 1010 (9th Cir. 1994).  However, "summary" does not only mean immediate and refer only to the court's timing.  *Sacher v. United States*, 343 U.S. 1, 9-11 (1952).  A court does not "forego its authority to use summary process by awaiting the completion of this final phase before imposing sentence for the direct contempt that occurred in the court's presence."  *Perry*, 116 F.3d at 956 (defendant urinated in the courtroom during the government's closing argument.  Punishment was not imposed until after the jury returned a verdict.).  We therefore believe it insignificant that the district court waited until the conclusion of the afternoon session to find him in direct criminal contempt.  Moreover, based upon the patently

contumacious acts which the court cited, we cannot say the finding of direct criminal contempt was an abuse of discretion.

Finally, Mr. Parkhurst contends, because criminal contempt must be proved beyond a reasonable doubt, the court erred when it concluded he was mentally competent. Our review of the record indicates the district court's remarks directed to Mr. Parkhurst's competence related to his request for a delay of the civil trial and appointment of counsel to represent him in that proceeding. In no way did the district court make a finding of competence related to the criminal contempt. That is made further clear in the order dismissing the civil action for mootness. For that reason, we find it unnecessary to deal with the issue here.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge

00-8013, <u>Parkhurst v. United States Department of Education</u>

**LUCERO**, Circuit Judge, concurring.

I concur in the opinion of Judge Porfilio.  When Judge Downes sentenced the appellant he said, "as for the <u>direct criminal contempt</u>, sir, it is the sentence of the Court that you be confined in a United States Bureau of Prisons facility to serve a term of ninety days for contempt" (emphasis added).  I find no ambiguity, or "bleeding-through" of indirect criminal contempt considerations in that clear declaration of the trial court.

In the court's written order of February 2, 2000, the ninety-day sentence is supported only upon the express findings that the appellant delayed the civil trial when he "refus[ed] to stand when addressing the Court" and that the appellant told the court "to hell with you."  Judge Downes did not rely on any other facts, nor did he enter any sentence for indirect criminal contempt.  I believe it improvident to indulge the appellant's invitation to speculate that the court did so.

Any reference by the trial court to the hearing on indirect criminal contempt is irrelevant because the court did not hold the defendant in contempt for indirect conduct and did not sentence him for such conduct.

**No. 00-8013, <u>Parkhurst v. U.S. Department of Education</u>**

**BRISCOE**, Circuit Judge, dissenting:

I respectfully dissent.  Although I agree with the majority that the contemptuous conduct the district court witnessed is punishable under Rule 42(a), I am unable to determine whether Parkhurst's untruthfulness, which was provable only through witness testimony and thus not punishable under Rule 42(a), <u>see</u> <u>In re Oliver</u>, 333 U.S. 257, 275 (1948), also provided a basis for the contempt order.  I would remand to the district court with directions to vacate and reconsider the contempt order.

Rule 42(a) permits summary punishment for criminal contempt without notice or a hearing when a trial judge certifies in a written order that he or she "saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."  The majority admits that the district court did not comply with this express requirement and explain in writing the factual basis for its contempt finding, <u>see</u> Majority Op. at 8-9, but both the majority and concurring opinions conclude that this deficiency is remedied by facts recited in the contempt order as well as by certain comments made by the court during the contempt hearing, <u>see</u> Majority Op. at 9-10; Concurring Op. at 1.  For the reasons that follow, I cannot agree.

First, the district court's contempt order does not offer much clarification as to why it found Parkhurst in direct criminal contempt.  Although it recounts that Parkhurst made the derogatory "to hell with you" comment and refused the court's direction to stand, the order does not, contrary to the suggestion of the majority and concurring

opinions, state that these particular events provided the actual basis for the finding of contempt. Nor does the order state that the trial judge "saw or heard" these events as expressly required by Rule 42(a). Instead, the order states only that "the basis for the contempt citation" was given "on the record" at the contempt hearing. ROA Vol. 1, Doc 136 at 2.

Second, reliance on "the transcript itself is insufficient to satisfy Rule 42(a)." United States v. Mathews, 49 F.3d 676, 678 (11th Cir. 1995). While the transcript reflects that the district court found Parkhurst in contempt for his "conduct in court th[at] morning," ROA Vol. 2 at 34, it does not clearly reflect whether the conduct the court found contemptuous included Parkhurst's lack of veracity, which was provable only by witness testimony and thus could not be punished summarily. After all, the court conducted a hearing on the issue of Parkhurst's veracity after warning him: "If I find out you're lying to me, I'll hold you in criminal contempt of court." Id. at 5-6. Then, during the hearing, the court informed Parkhurst of the penalties for criminal contempt and said he could avoid "that kind of sanction in the next few minutes as this hearing proceeds" by "exercising good judgment," id. at 31-32, suggesting that the court did not intend to base its contempt decision solely on Parkhurst's behavior in court that morning. Finally, at the end of the hearing, the court announced that Parkhurst's testimony was "unbelievable" shortly after finding him in criminal contempt. Id. at 37. Thus, far from making it "immediately" apparent that the district court's criminal contempt finding was based

- 2 -

solely on Parkhurst's "verbal abuse of the court and his manifest disdain for the court's authority earlier in the day," Majority Op. at 9, the transcript can reasonably be read to reflect that the district court based its criminal contempt finding at least in part on Parkhurst's lack of veracity.

But more importantly, even if the transcript clearly reflected that the contempt order was not based on Parkhurst's untruthfulness, "a transcribed recitation of the basis for the contempt finding cannot replace a certification by [the trial court] that [it] actually witnessed the conduct." Mathews, 49 F.3d at 678. Otherwise, "[a]llowing the transcript to satisfy the certification requirement [of Rule 42(a)] would in effect eliminate the requirement completely and dilute the procedural safeguards afforded those summarily convicted of criminal contempt." Id.; see also Widger v. United States, 244 F.2d 103, 107 (5th Cir. 1957) (cautioning that "courts proceeding summarily must be meticulously careful to observe procedural safeguards") (internal ellipses and quotations omitted). By looking beyond the contempt order in this case and relying on the district court's comments during the contempt hearing, the majority and concurring opinions ignore this basic procedural safeguard.

Therefore, because the district court did not clearly set forth in writing the factual basis for its contempt order as required by Rule 42(a), I would conclude that it abused its discretion in entering that order. While there is little doubt we could affirm the contempt order were it premised only upon Parkhurst's verbal abuse and failure to follow the

court's instructions, I would decline to do so absent a clear indication that these acts provided the sole basis for the court's decision. See Crowe v. Smith, 151 F.3d 217, 240 (5th Cir. 1998) ("For this court to affirm . . . sanctions on grounds other than those expressly chosen by the imposing court would constitute an encroachment upon that court's discretion unwarranted by the concerns for order and necessity inherent in their use."). Further, even if the contempt order was actually based on Rule 42(b), I would accept the DOE's implicit concession that the hearing did not comport with due process requirements and assume without deciding that the district court committed plain error[1] because it acted as judge, jury and prosecutor during the hearing and failed to give Parkhurst notice or an opportunity to prepare a defense or call witnesses on his behalf. I would remand to the district court with directions to vacate and reconsider the contempt order.

Finally, I disagree with the majority's conclusion that we need not decide whether the district court erred in finding Parkhurst mentally competent without a hearing simply because the district court did not make an express "finding of competence related to the criminal contempt." Majority Op. at 11. In United States v. Crews, 781 F.2d 826, 833 (10th Cir. 1986), we held that when a district court orders a criminal defendant to stand trial without making an express finding of competency, such an order constitutes an

---

[1] As Parkhurst candidly admits, the plain error standard applies to his Rule 42(b) argument because it was not raised in the district court. See United States v. McGuire, 200 F.3d 668, 671 n.2 (10th Cir. 1999).

- 4 -

implicit finding that the defendant was competent and that such an order is reviewable on appeal. Based on Crews, I would conclude that the district court's entry of the contempt order constitutes an implicit finding that Parkhurst was mentally competent to commit the crime of contempt, and that the district court's finding is reviewable by this court on appeal. However, because I would remand to the district court with directions to vacate and reconsider the contempt order, I would leave that issue for the district court to address in the first instance on remand.