UNITED STATES of America, Plaintiff,

v.

SYBARITIC, INC., Anthony S. Daffer, Steven J. Daffer, and Roland Berglund, Defendants.

Civil No. 09–3672 (JRT/JJK).

United States District Court, D. Minnesota.

May 27, 2011.

Ann M. Bildsten and Friedrich A.P. Siekert, Assistant United States Attorneys, United States Attorney's Office, Minneapolis, MN, Gerald C. Kell, United States Department of Justice, Washington, D.C., for Plaintiff.

Dulce J. Foster and Lousene M. Hoppe, Fredrikson & Byron, PA, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND OR-DER DENYING MOTION TO VA-CATE OR DISSOLVE CONSENT DECREE

JOHN R. TUNHEIM, District Judge.

On January 5, 2010, the United States and Sybaritic, Inc., Anthony S. Daffer, Steven J. Daffer, and Ronald Berglund (collectively, "defendants") reached an agreement on a permanent injunction that had been sought by the United States to bar defendants from selling certain products in interstate commerce. The resultant consent decree allowed defendants to continue exporting products subject to conditions imposed by the Food and Drug Administration ("FDA"). After an inspection of defendants' facilities, approximately ten months later, the FDA issued a cessation order on further exports. Defendants moved to vacate the cessation order or, alternatively, to modify or dissolve the consent decree. Because the Court finds that the government's action does not constitute arbitrary and capricious action, the Court will not vacate the order. Further, since defendants have not met their burden to warrant relief from the requirements of the consent decree, the Court declines to either modify ·or vacate the consent decree.

### BACKGROUND

Defendants market products for aesthetics and fitness including cosmetics, skin care products, and spa capsules. The FDA conducted inspections of defendants' operation beginning in May 2004 and continuing through March 2009. The investigators concluded that many of Sybaritic's products were adulterated and misbranded in violation of 21 U.S.C. § 331(a). After

discussions, the parties entered into a consent decree outlining the manner in which defendants would come into compliance with FDA regulations. (Consent Decree, Jan. 5, 2010, Docket No. 4.) The parties stipulated that the consent decree should be considered a final judgment of the Court. (Stip. to Enter Consent Decree as the Final J., Docket No. 3.)

The consent decree contains three paragraphs important to the disposition of the instant motion, paragraphs 9, 10, and 25. Paragraph 9, enjoins defendants from "directly or indirectly designing, manufacturing, processing, packing, repacking, labeling, holding, distributing, importing or exporting from the United States of America, any **device** . . ." until defendants have complied with a list of conditions such as hiring a regulations expert as a consultant and undergoing an audit to ensure compliance. (*Id.* ¶ 9.) There is an exemption, however, for "any device manufactured, processed, packaged, labeled, held for sale, or introduced into interstate commerce solely for export from the United States, provided that **the applicable requirements of 21 U.S.C. § 381(e)** have been satisfied with respect to any such device." (*Id.* ¶ 9(H) (emphasis added).)

Paragraph 10, requires defendants to notify the FDA in writing of their intent to "commence designing, manufacturing, or distributing any device" and demonstrate that the device is in compliance with certain FDA regulations. (*Id.* ¶ 10.) The consent decree also gives the FDA the right to inspect and to impose liquidated damages for violations. (*Id.* ¶¶ 16, 23.)

Paragraph 25, provides:
All decisions specified in this Decree shall be vested in the discretion of FDA and shall be final. When contested by Defendants, FDA's decision under this Decree shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). **Review shall be based exclusively on the written record before the FDA at the time the decision was made. No discovery shall be taken by either party.**

(*Id.* ¶ 25 (emphasis added).)

In March 2010, the FDA inspected defendants' facilities and determined that defendants were in violation of the consent decree due to the export of certain products that did not meet the requirements of 21 U.S.C. § 381(e) as specified in Paragraph 9(H). (*See* Aff. of Lousene M. Hoppe, Dec. 15, 2010, Ex. 2, Docket No. 22.) The United States issued a cessation order including an assessment of liquidated damages. (*Id.*, Ex. 4.) The cessation order addressed the export of seven devices:

- the Nannolight MP50 Intense Pulsed Light and Laser System
- the SkinBella Crystal Free Microdermabrasion System
- the Slimline POD
- the SlimLine OXYPOD Deluxe
- the TRIO
- the Alpha LED Oxy Light–Spa, and
- the Lumi Intense LED Facial System.

On December 10, 2010, United States Magistrate Judge Jeffrey J. Keyes granted a motion to stay the cessation order pending the outcome of this motion. (Docket No. 14.) Defendants move to vacate the cessation order or, alternatively, to modify or dissolve the consent decree.

## ANALYSIS

### I. STANDARD OF REVIEW

Paragraph 25 of the consent decree dictates that this Court must review the FDA's cessation order under the standard set forth in 5 U.S.C. § 706(2)(A). That statute allows a court to set aside an

agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Gipson v. INS*, 284 F.3d 913, 916 (8th Cir.2002). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). "An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir.2006) (citing *Motor Vehicle Mfrs.*, 463 U.S. at 42–43, 103 S.Ct. 2856). A court will affirm the agency's findings of fact if they are supported by "substantial evidence." *Redd v. Mukasey*, 535 F.3d 838, 842 (8th Cir.2008). The substantial evidence standard is "extremely deferential," and "the agency's findings of fact must be upheld unless the [defendant] demonstrates that the evidence ... presented not only supports a contrary conclusion but **compels** it." *Al Yatim v. Mukasey*, 531 F.3d 584, 587 (8th Cir.2008) (emphasis original) (internal quotation marks omitted). Further, per the consent decree, the court is obliged to evaluate the FDA's decision without taking discovery. (Consent Decree ¶ 25, Docket No. 4.)

## A. Defendants' Products Are "Devices"

■ As an initial matter, defendants argue that three of the devices covered by the cessation order, the Slimline POD, Slimline OXYPOD Deluxe, and the Alpha LED Oxy Lite–Spa, are not "devices" and therefore should not be regulated by the consent decree at all. The FDA defines a "device" as an instrument which is

> intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or ...

intended to affect the structure or any function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes.

21 U.S.C. § 321(h). Courts assess whether an instrument is a "device" based on the intended use of the product as determined from its label, accompanying labeling, promotional claims, advertising, and any other relevant source, including consumer intent. *Assoc. of Am. Physicians & Surgeons, Inc. v. United States*, 226 F.Supp.2d 204, 216 (D.D.C.2002) (citing *Hanson v. United States*, 417 F.Supp. 30, 35 (D.Minn.1976)).

■ Defendants argue that the Slimline POD, Slimline OXYPOD Deluxe, and the Alpha LED Oxy Lite–Spa are not "devices" since the expert it retained pursuant to the consent decree declared they were not devices under § 321(h) because he opined the labeling contained no medical claims. (Hoppe Aff. Ex. 5, Docket No. 22.) However, the Court notes that the consent decree contemplated that any decision of the expert would be subject to an audit, indicating that his determination was not final or binding on the FDA. Therefore, this reasoning is not persuasive.

Defendants argue further that the different products' advertising—which claim that the products produce weight loss, scar reductions, wrinkle reduction, and other arguably health related claims falling within the confines of § 321(h)—is directed at an international audience and therefore is not probative of whether the products are devices under U.S. law. However, defendants cite no authority, nor is the Court independently aware of any, in support of the proposition that **where** the audience is located for the advertising of a product

dictates the definition of "intended use" under the FDA's regulatory scheme. As a result, the Court finds no basis to deviate from the FDA's determination that the products are devices and therefore are covered by the terms of the consent decree.

### B. Paragraph 9(H)

Defendants argue that the meaning of Paragraph 9(H) was to allow defendants to continue exporting goods outside of the United States while only complying with the requirements of 21 U.S.C. § 381(e)(1). Section 381(e)(1) permits the exportation of a good if it:

> (A) accords to the specifications of the foreign purchaser, (B) is not in conflict with the laws of the country to which it is intended for export, (C) is labeled on the outside of the shipping package that it is intended for export, and (D) is not sold or offered for sale in domestic commerce.

21 U.S.C. § 381(e)(1).

Defendants contend that all of their exportation of goods met these four criteria. The United States asserts that the consent decree calls for exported products to meet the requirements of 381(e), which necessarily includes both 381(e)(1) and (e)(2). Section 381(e)(2) states that "Paragraph (1) does not apply to any [unapproved] device ..., unless, in addition to the requirements of Paragraph (1) ... the device is eligible for export under section 382 of this title." Since the FDA considers the devices unapproved, the government argues that in order to be able to export those goods, the defendants must demonstrate compliance with § 382.

Defendants urge the Court to consider extrinsic evidence of their intent in the phrasing of this paragraph, arguing they would have never entered into the decree had they thought this meaning would be applied to Paragraph 9(H). However, the parties were represented by lawyers who were certainly capable of creating a document that memorialized the parties' intent. Further, the Court declines to evaluate extrinsic evidence based on Paragraph 25 which directs the Court to review only "the written record before the FDA at the time" the cessation order was issued.

██  Therefore, the Court finds that the plain language of Paragraph 9(H) applies—defendants' exports must meet the requirements of § 381(e) in its entirety. The language contains no limitation on which parts of that section apply. Finally, there is no indication that applying the regulations to defendants' products—in a case where forcing the defendants to comply with FDA regulations was the overarching intent of the initial court action and the consent decree—is arbitrary or capricious.

Defendants next argue that strict enforcement of the requirements of 21 U.S.C. § 382 is itself arbitrary and capricious. Under § 382, a device not "manufactured, processed, packaged, and held in substantial conformity with current good manufacturing practice requirements [ ("CGMP") ]" is ineligible for export. 21 U.S.C. § 382(f); *see also United States v. Undetermined Quantities of Boxes of Articles of Device,* No 07–1769, 2007 WL 1575188, at *2 (D.N.J. May 30, 2007) ("Read together [§§ 381(e)(1) and 382(f) ] create the following rule: an adulterated device may be exported if it meets the four requirements found in § 381(e)(1)(A)-(D); however, this exception does not apply if the product is unapproved unless the product ... meets the CGMP requirements.) "Moreover, devices that fail to meet the requirements of section ... 360(e) (relating to ... premarket approval) are not eligible for export under 381(e), unless the FDA grants an exception." *United States*

*v. Themy–Kotronakis,* 140 F.3d 858, 863 (10th Cir.1998).

Defendants concede they have not met the CGMP requirements. However, defendants argue that the FDA regularly has determined that if a product meets the four requirements of § 381(e) and also the requirements of § 360c, then the CGMP requirements are not applicable. Therefore, they argue the application of these requirements here constitutes a position contrary to previous practice and as such the Court should find it to be arbitrary and capricious.

As devices that were marketed after the enactment of the Medical Device Amendments of 1976, the products at issue are Class III devices. 21 U.S.C. § 360c(f)(1) (2006). Class III devices require premarket approval of a reasonable assurance of their safety and effectiveness before a manufacturer can sell or distribute the devices. *Id.* § 360c(a)(1)(C). A Class III device that is "substantially equivalent to a previously marketed device" does not need premarket approval but rather can be marketed if it has FDA clearance, whereby the FDA clears the product based on the predicate device. 21 U.S.C. § 360c(f). The process to receive this clearance is outlined in the Code of Federal Regulations and referred to as a "510(k) approval." 21 C.F.R. § § 807.92, 807.100 (2011). The manufacturer must submit a 501(k) notification to the FDA, and the FDA must issue an order declaring the product to be cleared before it can be marketed. *Id.*

None of the contested devices received premarket approval. Rather, defendants claim that one of the devices, the Nannolight MP50 Intense Pulsed Light and Laser System has 501(k) clearance and the other devices are "510(k)-able"—meaning

the defendants were led to believe that the FDA would approve the status of their products had they submitted the 510(k) notification. They base this assertion on a publication on the FDA's website which reports:

> [The] FDA has exercised its enforcement discretion and, to date, has not taken enforcement action against a firm who has not complied with the export criteria in section [301](e)(2) of the [Food and Drug] Act, provided that the firm has reasonably concluded that FDA would have granted 510(k) marketing clearance if a report under section 510(k) of the Act had been submitted.

Guidance for Industry: Exports Under the FDA Export Reform and Enhancement Act of 1996 at 24 (2007).[1] However, the next line of the publication states "[the] FDA intends, on a case by case basis, to continue to consider the exercise of its enforcement discretion in this manner with respect to the requirements in section [308(e)(2) ] of the Act." *Id.*

■ Where defendants were under a consent decree based on their non-compliance with FDA regulations, the Court does not find it reasonable for them to assume their products could avoid either premarket approval or 510(k) clearance on the basis of this FDA publication. Furthermore, where the FDA has specifically retained discretion, the Court does not find the exercise of this discretion violates the arbitrary and capricious standard applicable to the agency's decision. The Eighth Circuit Court of Appeals, applying the arbitrary and capricious standard to a Medicaid Service decision, held that even where the level of scrutiny applied to the facts of one case may differ from others, extra vigilance does not constitute arbi-

---

**1.** Available at http://www.fda.gov/downloads/ RegulatoryInformation/Guidances/ucm 125898.pdf.

trary and capricious action. *Minn. v. Ctrs. for Medicare and Medicaid Servs.*, 495 F.3d 991, 998 (8th Cir.2007). This determination is particularly so in cases where the agency decision is based on "scepticism [that] was warranted...." *Id.* at 999. Here, given the history of defendants' actions, the skepticism of the FDA was warranted, it retained the discretion to apply the regulations at issue, and the Court does not find this constitutes arbitrary or capricious action sufficient to overturn the agency's decision.

■ Even if the Court were to hold that only the requirements of § 381(e)(1) should be applied to defendants' products, the FDA's determination that these requirements have not been met are entitled to the Court's deference under the arbitrary and capricious standard. The four requirements of this regulation are 1) that the product accords to the specifications of the foreign purchaser, 2) is not in conflict with the laws of the country to which it is intended for export, 3) is labeled on the outside of the shipping package that it is intended for export, and 4) is not sold or offered for sale in domestic commerce. 21 U.S.C. § 381(e)(1). The FDA argues that defendants have not met the second and fourth requirements.

### 1. Is not in conflict with the laws of the country to which it is intended for export

In order for a manufacturer to demonstrate that its exports are in compliance with the laws of the country of export, it must maintain

> [r]ecords demonstrating [compliance that] may consist of either **a letter** from an appropriate foreign government agency, department, or other authorized body stating that the product has marketing approval from the foreign government or does not conflict with that country's laws, or **a notarized certification**

by a responsible company official in the United States that the product does not conflict with the laws of the importing country....

21 CFR § 1.101(b)(2) (emphasis added). Defendants have none of these records, so the government asserts they cannot demonstrate compliance. While defendants point to other facts as potential evidence that they have complied with foreign export laws—such as invoices written by defendants telling foreign exporters that the exports must be in compliance with foreign laws and that the devices bear the CE mark, an indication that a product conforms with a European Union Directive—this evidence does not fulfill the requirement of the regulation. The regulation clearly indicates that compliance is proven by an incoming affirmation, not an outgoing disclaimer. Further, the CE mark on the products is a sticker applied by the defendants, not necessarily an affirmation that the product has been inspected by a third party and found in compliance.

The FDA has determined that the documentation defendants have does not satisfy the regulation. Based on the information available to the FDA at the time of the cessation order, defendants have not met their burden of showing that the evidence compels a different conclusion.

### 2. Is not sold or offered for sale in domestic commerce

The parties disagree as to the meaning of "is" in the regulation. 21 U.S.C. § 381(e)(1) (permitting the exportation of a good if it "**is** not sold or offered for sale in domestic commerce." (emphasis added)). The government argues that if a product was **ever** sold in interstate commerce, it cannot satisfy this requirement. FDA guidance on the regulation appears to distinguish the moment in time when the decision is made to export. Guidance for Industry: Exports Under the FDA Export

Reform and Enhancement Act of 1996 at 22 ("Another situation is where a firm does not decide to export a specific product until it has already begun the manufacturing process.... This also may meet the ... requirement [to allow exportation] if the decision to export the product is made at a distinct, identifiable, and documented point in the manufacturing process; the product is not adulterated or misbranded at the point the decision is made; and the action that causes the product to become adulterated or misbranded, such as conforming the product to a foreign specification, is taken subsequent to the decision."). Here, however, the consent decree specifically allows defendants to export goods despite the enjoinment of domestic sales of misbranded goods. Without other evidence of domestic sales, whether concurrent or prior in time, it appears that the language of the consent decree allows defendants to sell products previously sold domestically, as long as they abide by export regulations and are not also selling in the domestic market. Therefore, on this contested prong, the evidence might compel a different conclusion than that of the FDA.

However, § 381(e)(1) requires the manufacturer to meet **all** of the four requirements, therefore even if § 318(e)(2) did not apply to defendants exports, the FDA determination that the cessation order was still warranted for lack of compliance with one of those requirements survives the arbitrary and capricious standard.

**C. Paragraph 10**

█ Paragraph 10 of the decree states that defendants are required to notify the FDA before they commence distribution of products. Defendants admit they failed to notify the FDA of their exportation of the devices in the cessation order, however, they argue the paragraph applied only to distribution activity that had not already been authorized by the decree. However,

given the plain language of the consent decree and its purpose to bring defendants into compliance with government regulations, the Court does not find a different outcome compelled. Enforcing this provision of the consent decree does not constitute arbitrary or capricious action.

## II. MODIFICATION OF A CONSENT DECREE

Defendants argue that the Court has discretion to modify the consent decree so as to alter the language in Paragraph 9(H) to reflect their intent that only § 381(e)(1) apply to their exports. Courts have analyzed the modification of consent decrees under differing standards. The Supreme Court, in *United States v. Swift & Co.*, articulated: "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932). While the Supreme Court has indicated that *Swift* is no longer a hard and fast rule, it has not overturned the precedent. *See Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 383, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992).

> Although we hold that a district court should exercise flexibility in considering requests for modification of a[ ] ... consent decree, it does not follow that a modification will be warranted in all circumstances. Rule 60(b)(5) provides that a party may obtain relief from a court order when "it is no longer equitable that the judgment should have prospective application," **not when it is no longer convenient to live with the terms of a consent decree.** Accordingly, a party seeking modification of a consent decree bears the burden of establishing that a significant change in

circumstances warrants revision of the decree.

*Id.* (emphasis added).

As a result, the Court stated that to modify a consent decree that relates to the vindication of a constitutional right, the "party seeking modification of a consent decree may meet its initial burden by showing either a significant change either in factual conditions or in law." *Id.* at 384, 112 S.Ct. 748. The Court indicated that this standard only applied to the particular facts before it, namely a consent decree concerning the vindication of a constitutional right. *Id.* at 383 n. 7, 112 S.Ct. 748. The Eighth Circuit has distinguished cases where the issue was one relating to constitutional rights issues, *Parton v. White*, 203 F.3d 552, 555 (8th Cir.2000) ("Courts should exercise flexibility in considering modification requests in prison-reform litigation." (citing *Rufo*, 502 U.S. at 383, 112 S.Ct. 748)), without going so far as to say the *Swift* standard would apply to all other types of modifications.

Other Circuit Courts, however, have implied that the *Swift* grievous wrong standard may still apply to cases not founded on constitutional rights. *See, e.g., Johnson v. Florida*, 348 F.3d 1334, 1342–44 (11th Cir.2003) (noting the public interest in institutional reform was the driving force behind the *Rufo* holding); *Alexis Lichine & Cie v. Sacha A. Lichine Estate Selections, Ltd.*, 45 F.3d 582, 586 (1st Cir.1995) ("Thus, rather than saying either that there is an 'institutional reform' exception to *Swift* or a 'private commercial party' exception to *Rufo*, we [consider modification of a consent decree] having in mind that we are dealing with a decree arising from a commercial dispute and based on a bargain voluntarily entered into by businessmen represented by lawyers.")

■ Under either the "grievous wrong" standard of *Swift* or the "change in facts or law" standard of *Rufo*, defendants fail to demonstrate a clear showing for relief. They essentially argue that there is a misunderstanding of Paragraph 9(H). They argue that adherence to the plain language of the consent decree would render them financially unable to complete their other obligations under the decree. Without a claim that the facts or law have changed, their argument is analogous to the situation anticipated by the *Rufo* Court where the consent decree has simply become inconvenient for the defendants. Therefore, the Court declines to modify the consent decree.

## III. DISSOLUTION OF THE CONSENT DECREE

■ A consent decree is considered a final judgment of a court. *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 708 F.Supp.2d 890, 896 (D.Minn.2010). Defendants move, in the alternative, for the Court to dissolve the consent decree which requires the Court to analyze the facts under the standard to grant relief from a final judgment, order, or proceeding. Fed.R.Civ.P. 60.

Under Rule 60(b), a party may seek relief from a judgment for

> (1) mistake, inadvertence, surprise, or excusable neglect; … (3) fraud …, misrepresentation, or other misconduct of an adverse party; … (5) applying [the consent decree] prospectively is no longer equitable; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). The rule "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, No. 06–2543, 2009 WL 928330, at *7 (D.Minn. Mar. 31, 2009) (citing *United States v. Young*, 806 F.2d 805, 806 (8th Cir.1986)).

## A. Mistake, Inadvertence, Surprise, or Excusable Neglect

Clause 1 of Rule 60(b) provides grounds for relief on the basis of mistake, inadvertence, surprise, or excusable neglect. Fed. R.Civ.P. 60(b)(1). "Rule 60 does not relieve parties from strategic mistakes." *Tareco Props., Inc. v. Morriss*, 321 F.3d 545, 549 (6th Cir.2003). Therefore, parties who enter into consent decrees with the aid of competent counsel and with full knowledge of all the relevant facts cannot later seek relief for mistake. *Id.*

■ Defendants argue that they entered into the agreement with the understanding that they would be allowed to export their products by only complying with § 381(e)(1) and without having to notify the FDA in advance. However, even if they held this subjective belief, it was not memorialized by the written consent decree. Given the burden to show exceptional circumstances, the Court will not dissolve the consent decree on these grounds.

## B. Fraud or misrepresentation

■ "To prevail on a Rule 60(b)(3) motion, [defendants] must show, with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 935 (8th Cir.2006) (internal quotation marks omitted). Here, defendants argue that the government misrepresented the meaning of Paragraph 9(H) such that they should be relieved of the judgment. They present affidavits from officers of Sybaritic as to telephone conversations and supposed promises made by the FDA. This evidence does not rise to the level of "clear and convincing." Further, even if this evidence did meet the standard, defendants must show that they **also** were prevented from fully and fairly presenting

their case. *See id.* ("Under Rule 60(b)(3), [the movant] was required to show that the [government] engaged in fraud or misrepresentation, **and** that it was prevented from fully and fairly litigating this case." (emphasis original)). Defendants could have inserted the language they now propose into the consent decree, and provide no reason why they chose not to do so. Therefore, the Court will not dissolve the consent decree on these grounds.

## C. Equity

Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, "applying [the judgment or order] prospectively is no longer equitable." The Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if "a significant change either in factual conditions or in law" renders continued enforcement "detrimental to the public interest." *Rufo*, 502 U.S. at 384, 112 S.Ct. 748. The party seeking relief bears the burden of establishing that changed circumstances warrant relief. *Id.* at 383, 112 S.Ct. 748.

Here defendants argue that the FDA's application of the different regulations inconsistent with their own guidelines constitutes a change in law. Further, they argue that shutting down their current export practices, making them unable to meet the other requirements of the consent decree, constitutes a change in facts.

■ However, "modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *White v. Nat'l Football League*, 585 F.3d 1129, 1136 (8th Cir.2009) (citing *Rufo*, 502 U.S. at 385, 112 S.Ct. 748). The entire consent decree involved a change in the defendants' business. Any financial consequences that have befallen them should have been antic-

ipated, and therefore are not grounds for relief from the decree. Further, the government points out that the defendants are not enjoined from exporting entirely; they simply must do so in accordance with FDA regulations.

Finally, dissolution under Rule 60(b)(5) is anticipated when it will benefit the public. *Rufo*, 502 U.S. at 384, 112 S.Ct. 748. Here, allowing defendants to ship goods that do not satisfy federal safety regulations is contrary to the public interest. The regulations that defendants claim the FDA is arbitrarily enforcing are ones in which the FDA has always retained the discretion to enforce on a case to case basis. Further, defendants could have anticipated the change in their financial status when entering into the decree. The Court declines to dissolve the consent decree on this basis.

### D. Exceptional circumstances

"[R]elief under Rule 60(b)(6) is available only where exceptional circumstances have denied the moving party the full and fair opportunity to litigate the claim." *3M Innovative Props. Co. v. Avery Dennison Corp.*, No. 01–1781, 2006 WL 2735496, at *4 (D.Minn. Sept. 25, 2006) (citing *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005)). Courts have found exceptional circumstances in material breach of an agreement by one party. *United States v. Baus*, 834 F.2d 1114, 1124–27 (1st Cir. 1987). Further, a defendant who was ill, in jail, and without a lawyer could demonstrate "exceptional circumstances" necessary for relief from a default judgment. *Klapprott v. United States*, 335 U.S. 601, 613–14, 69 S.Ct. 384, 93 L.Ed. 266 (1949). In contrast, the Supreme Court has held that "[b]y no stretch of the imagination can . . . voluntary, deliberate, free, untrammelled choice" be considered exceptional circumstances. *Ackermann v. United States*, 340 U.S. 193, 200, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

Here defendants seek relief because of an alleged misrepresentation by the government, substantiated only through their officers' affidavits. They claim financial hardship as an exceptional circumstance, yet the terms of the consent decree were clear when signed, and the financial hardship surely must have been anticipated at the time of signing due to the dramatic enjoinment of the defendants' domestic operations. The Court declines to dissolve the consent decree on this basis.

In summation, Court declines to overrule the FDA's cessation order, since under the arbitrary and capricious standard, the evidence does not compel a different outcome. Furthermore, the Court will not modify the wording of Paragraph 9(H) since defendants have not met the burden of the "grievous wrong" standard of *Swift* or the "change in facts or law" standard of *Rufo*. Finally, defendants have not met the requirements for any of the potential relief under Rule 60. As a result, the Court denies the motion in its entirety.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Vacate or Dissolve Consent Decree [Docket No. 17] is **DENIED.**