FILED
United States Court of Appeals
Tenth Circuit

October 22, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN HAYES,

    Plaintiff,

v.

SKYWEST AIRLINES, INC.,

    Defendant.

-----------------------------

ANN RUTLEDGE,

    Movant - Appellant.

No. 17-1417
(D.C. No. 1:15-CV-02015-REB-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

The district court summarily issued an order holding Ann Rutledge, a legal

secretary, in criminal contempt based on her signaling a witness not to answer questions

during trial.  Ms. Rutledge seeks reversal on the ground that the elements of the offense

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

were not satisfied. We are not persuaded. The district court's findings of fact establish that her conduct satisfied all the elements of criminal contempt. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     Background

John Hayes brought employment-related claims against SkyWest Airlines. Ms. Rutledge helped SkyWest's attorneys present electronic evidence during trial. During cross-examination of a SkyWest witness on the fourth day of trial, Hayes's attorney directed the witness's attention to a particular exhibit. Ms. Rutledge, who was sitting at counsel table, gestured to the witness not to answer questions about the exhibit.

The district court saw the gesture and immediately held a bench conference. It then excused the jury and questioned Ms. Rutledge, who admitted the meaning of the gesture. She explained, "It was just a flinch reaction" and apologized. Aplt. App. at 222. But the court orally held her in contempt and ordered her to leave the courtroom.

After Ms. Rutledge departed, the district court discussed the impact on the proceedings with counsel. It then questioned the witness and the jury. When neither reported seeing the gesture, the trial resumed.

The district court later entered a written amended order of contempt. Citing 18 U.S.C. § 401(1) and Fed. R. Crim. P. 42(b), the court explained that it had exercised its authority "to summarily punish criminal contempt committed in the presence of the court." Aplt. App. at 138. It found "beyond a reasonable doubt, that Ann Rutledge committed willful misbehavior in the presence of the court which actually obstructed the administration of justice." *Id*. at 143. Based on its own observations and Ms. Rutledge's

2

testimony, it found that she "did not merely 'flinch,' she purposefully and deliberately directed the witness not to answer questions about an exhibit which had been admitted in evidence." *Id.* at 140–41. The court therefore reiterated its "initial finding and conclusion that [she was] guilty of direct criminal contempt" under § 401(1). *Id*. at 143.

Ultimately, however, the court did not impose any fine or imprisonment. After the hearing to consider the imposition of punitive sanctions, the court noted that Ms. Rutledge had lost her job "as a result of the incident which led to the finding of contempt," and determined that this "was itself a form of punishment." *Id.* at 145. Thus, the court "found it sufficient simply to admonish Ms. Rutledge as to the consequences of her contumacious behavior to impress on her the seriousness of the violation." *Id.*

## II.    Analysis

We review a summary contempt order for an abuse of discretion. *See In re Contempt Order*, 441 F.3d 1266, 1267 (10th Cir. 2006). To prevail, Ms. Rutledge must show the district court's decision was "founded upon an error of law, or a finding of fact that is clearly erroneous." *Id*. A district court may summarily punish "such contempt of its authority . . . as . . . [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1); *see also* Fed. R. Crim. P. 42(b) (describing the procedural requirements for summary punishment of criminal contempt). A conviction under § 401(1) has four elements that must be proved beyond a reasonable doubt: (1) misbehavior, (2) in or near the presence of the court, (3) that obstructed the administration of justice, and (4) that was committed with the requisite criminal intent. *See United States v. Peoples*, 698 F.3d 185, 189 (4th Cir. 2012); *In re*

3

*Sealed Case*, 627 F.3d 1235, 1237 (D.C. Cir. 2010); *United States v. Ortlieb*, 274 F.3d 871, 874 (5th Cir. 2001); *Vaughn v. City of Flint*, 752 F.2d 1160, 1167 (6th Cir. 1985); *United States v. Seale*, 461 F.2d 345, 366–67 (7th Cir. 1972).

### A. Willfulness

Ms. Rutledge argues that she lacked the required mental state for criminal contempt because her conduct was not willful. In *United States v. Peterson*, 456 F.2d 1135, 1139 (10th Cir. 1972), we held that criminal contempt "necessarily involves the element of willfulness." "Willful . . . is a word of many meanings, and its construction is often . . . influenced by its context." *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994) (second ellipsis in original) (brackets and internal quotation marks omitted). We have not elaborated on the construction of willfulness in the context of § 401(1), but we have done so for § 401(3), which allows a district court to punish criminal contempt in the form of "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." In *United States v. Themy-Kotronakis*, 140 F.3d 858, 860–61 (10th Cir. 1998), a defendant was prosecuted for criminal contempt for selling medical devices in violation of an injunction. We held that "[i]n the context of criminal contempt, willfulness is defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrong." *Id.* at 864 (internal quotation marks omitted). In *United States v. Voss*, 82 F.3d 1521 (10th Cir. 1996), another case arising under § 401(3), we upheld against a plain-error challenge a jury instruction providing a similar definition:

> For purposes of the contempt offenses the term "willfully" means that the defendant performed an act, or failed to act, knowingly, voluntarily, deliberately and intentionally, as contrasted with accidentally, carelessly or

4

> unintentionally. The purpose of the "willfully" language, for purposes of the conspiracy and contempt charges, is to insure that a defendant will not be convicted for accidental, careless, or unintentional acts.

*Id.* at 1530 (ellipses omitted).

Ms. Rutledge agrees that the willfulness requirement is satisfied if a defendant acts volitionally and with knowledge that her act is wrongful.  But she argues that the district court improperly found that standard satisfied simply because a reasonable person would have known that attempting to communicate with a witness in open court was wrongful—in other words, on the basis of negligence—and that the district court could not have found her guilty if it had applied the proper standard because her conduct was, at worst, negligent.

The district court's order makes clear, however, that it applied the appropriate standard of willfulness.  The court explained that "willfulness in this context is defined as a 'volitional act done by one who knows or should reasonably be aware that her conduct is wrongful.'"  Aplt. App. at 140 (brackets omitted) (quoting *Themy-Kotronakis*, 140 F.3d at 864).  And it found that Ms. Rutledge's conduct was "willful in this relevant sense" because she "purposefully and deliberately directed the witness not to answer questions."  *Id.*  She asserts that although the court quoted the appropriate legal standard, it in fact applied a lesser negligence standard to her conduct, as evidenced by a footnote in its order stating, "Whether Ms. Rutledge is legally adroit *vel non* is irrelevant.  It requires no legal training or background to understand that attempting to communicate with a witness who is then testifying on the stand, with the express intent to direct her not to testify, is highly improper, if not criminal."  *Id.* at 141.  In our view, however, the

5

footnote is fully consistent with the court's finding that this court's standard was satisfied; it does not indicate that the court convicted her simply for "accidental, careless, or unintentional acts." *Voss*, 82 F.3d at 1530 (internal quotation marks omitted).

Moreover, the district court's ultimate findings are supported by specific findings that Ms. Rutledge does not challenge as clear error. She argues that the record shows that her action was "impulsive" and a "flinch," and that such reflexive conduct does not demonstrate the sort of deliberate wrongdoing that qualifies as willful. Aplt. Br. at 35–36. Yet she does not claim that her actions were nonvolitional, as a true flinch or reflex might be. *See* 1 Wayne R. LaFave, *Substantive Criminal Law* § 6.1(c) (3d ed. 2018) ("There is general agreement that a mere reflex is not a voluntary act. It should be noted, however, that the term 'reflex' does not cover all instances of bodily movement in quick response to some outside force or circumstances. A reflex is a muscular reaction in which the mind and will have no share, such as a knee jerk or the blinking of the eyelids." (footnote and internal quotation marks omitted)). Instead, she is arguing that because her actions were impulsive, they could not have been knowingly wrongful.

But the district court stated that it "observed Ms. Rutledge communicating or attempting to communicate with the witness, through both words and body language, in a manner which appeared intended to direct the witness not to answer any questions about the exhibit." Aplt. App. at 138. It specifically found that "she *did not* merely 'flinch,'" but rather "purposefully and deliberately directed the witness not to answer questions." *Id.* at 140 (emphasis added). And it found that directing the witness not to answer questions about the document was her intention, as she stated expressly under

6

questioning by the court[1] and in a later affidavit in support of a motion to vacate the contempt conviction. The affidavit confirms that her actions were deliberate and considered:

> My initial reaction to the exhibit on the screen was that it was not part of direct testimony and therefore not subject to cross-examination. As I had seen throughout the trial that objections would be made by attorneys when witnesses were being cross-examined on topics that were beyond the scope of direct examination . . . I reacted and gestured a 'no' toward [the witness].

*Id.* at 111–12. We are confident that the district court properly found that Ms. Rutledge knew her conduct was wrongful.

This intentional behavior may have resulted from a momentary lapse in judgment and may have been quickly regretted, but the mere fact that conduct is spur-of-the-moment does not mean it cannot also be willful. *Cf. United States v. Jordan*, No. 96-4133, 1996 WL 636398, at *2 (4th Cir. Nov. 5, 1996) (per curiam) ("While [the defendant's] conduct may have been impulsive, it was also active and willful"). For example, courts have frequently recognized that a party's profane outburst in court can

---

[1] After stating that he saw Ms. Rutledge attempting to communicate with the witness, the judge called her to the podium, and the following exchange occurred:

> THE COURT: What did you say to the witness or attempt to say to the witness?
> MS. RUTLEDGE: When I saw the document that came up, I had a reaction, and I turned and I gestured don't answer a question about it.
> THE COURT: You did what?
> MS. RUTLEDGE: I gestured to her to not answer questions about the document. It was just a flinch reaction. I apologize. I shouldn't have done it. It was just -- I just reacted.

Aplt. App. at 222–23.

support a conviction for criminal contempt, even though such outbursts are almost always impulsive. *See, e.g.*, *Sealed Case*, 627 F.3d at 1236, 1238 (vulgar exclamation upon imposition of sentence); *United States v. Marshall*, 371 F.3d 42, 44–45, 48 (2d Cir. 2004) (vulgar insult to judge at end of allocution); *United States v. Browne*, 318 F.3d 261, 263, 267 (1st Cir. 2003) (mumbled insult to judge on way out of courtroom).

### B. Actual Obstruction

Ms. Rutledge also argues that her conduct did not actually obstruct justice, because the only interference with the trial that occurred before the district court's finding of contempt resulted from the contempt proceedings themselves. The Supreme Court has held that a district court can make a finding of criminal contempt under § 401(1) only when a person's misbehavior causes "an actual obstruction of justice." *In re McConnell*, 370 U.S. 230, 234 (1962); *see also Ex parte Hudgings*, 249 U.S. 378, 383 (1919) ("An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted . . . ."). We have similarly held that "direct contempt" is permissible only to punish "contumacious conduct that may portend a threat to a court's immediate ability to conduct its proceedings." *Contempt Order*, 441 F.3d at 1268. This court has said little about the nature and extent of interference necessary to support a contempt citation. In an unpublished opinion, however, we upheld a criminal-contempt order when a defendant "delayed [a] civil trial by refusing to stand when addressing the Court and otherwise

8

refusing the instruction of the Court, and by making derogatory comments to the Court, including telling the Court 'to hell with you.'" *Parkhurst v. U.S. Dep't of Educ.*, 9 F. App'x 900, 903–04 (10th Cir. 2001) (internal quotation marks omitted); *see also id.* at 906 (Lucero, J., concurring) (the contempt order is "supported only upon the express findings that the appellant delayed the civil trial when he refused to stand when addressing the Court and that the appellant told the court 'to hell with you.'" (brackets and internal quotation marks omitted)).

Other courts have discussed more fully the degree of interference required for a finding of actual obstruction. In *Seale* the Seventh Circuit held that "the very delay of the proceedings occasioned by a disrespectful outburst or other misbehavior may be sufficient to constitute a material obstruction. Thus, if a not insubstantial delay is entirely unnecessary and the misconduct serves, for instance, solely to vent the speaker's spleen, the requisite obstruction would be present." 461 F.2d at 370. In a later case the Seventh Circuit said that "the government must prove (of course beyond a reasonable doubt) that the misbehavior actually obstructed the administration of justice—by delaying proceedings, making more work for the judge, inducing error, imposing costs on parties, or whatever." *United States v. Oberhellman*, 946 F.2d 50, 52 (7th Cir. 1991). The Fifth Circuit, too, has held that "[o]bstruction can be shown by establishing that the defendant's acts delayed the proceedings, made more work for the judge, induced error or imposed unnecessary costs on the other parties." *Ortlieb*, 274 F.3d at 876 (internal quotation marks omitted). The court held that delay resulting from the need to call a bench conference or retire the jury in order to respond to a party's remarks constituted

9

actual obstruction. *See id.* at 876–77. More recently, the Fourth Circuit also recognized that "[t]o satisfy the obstruction element it suffices if the defendant's conduct interrupted the orderly process of the administration of justice by distracting court personnel from, and delaying them in, completing their duties." *Peoples*, 698 F.3d at 191 (brackets and internal quotation marks omitted).

Most in point, the D.C. Circuit has addressed an attempt to communicate with a testifying witness. In *United States v. McGainey*, 37 F.3d 682, 683 (D.C. Cir. 1994), courtroom deputies observed McGainey in the court's gallery "use the forefinger and thumb of his right hand to form the shape of a gun, which he held to his head as he faced the witness stand for approximately three to five seconds." "When [he] made eye contact with [one of the deputies], he quickly moved his hand, appeared to scratch his ear, and put his hand down." *Id.* The deputies asked him to leave the courtroom, and the judge was informed. *See id.* The judge paused proceedings to learn more details from a deputy and then "halted [the witness's] testimony, excused the jury, and held a bench conference to determine whether the threatening conduct had been observed by the witness, jury, or counsel." *Id.* at 684. During the bench conference the witness testified that he had not seen McGainey's hand gesture, and the judge determined it was unlikely that the jury had either. *See id.* After a trial before another judge, McGainey was convicted of criminal contempt under § 401(1). *See id.* The circuit court affirmed the conviction, rejecting the argument that the conduct at issue had not caused an actual obstruction. *See id.* at 684–86. The court held that although no one except court personnel had witnessed the threatening gesture, it had caused an actual obstruction of justice because it "caused a

10

significant interference with the trial proceedings, including diverting [two deputies] from their posts, and requiring [the judge] to be interrupted twice, [the witness's] testimony to be halted, and the jury to leave the courtroom for almost 10 minutes. The judge was also obliged to engage in a colloquy with counsel at the bench in order to determine whether the threatening conduct had in any way prejudiced the trial." *Id.* at 685. The court noted that the disruption was especially severe because the judge "was obliged to inquire into the matter during the trial, and, surely, the judge's attention is the core judicial resource deployed at a crucial trial." *Id.*

In this case the district court found that there was an actual obstruction of justice because the court "was required to immediately stop the examination, commission a bench conference, excuse the jury, question Ms. Rutledge and [the witness] about the incident, and inquire of the attorneys how they wished to proceed, after which [the court] was required to query the jury as to whether they saw Ms. Rutledge's actions." Aplt. App. at 142. Ms. Rutledge does not dispute that this sort of delay might be sufficient to constitute actual obstruction, but argues that it cannot suffice in this case, because the delay and work for the district court that occurred before the finding of contempt were solely to determine whether her actions were contumacious. She points to opinions from other courts saying that the investigation into and hearing on whether a party should be held in contempt cannot themselves constitute the obstruction necessary to support a finding of contempt. *See, e.g.*, *United States v. Time*, 21 F.3d 635, 641 (5th Cir. 1994) ("The time consumed by the contempt investigation itself is not considered in this [actual-obstruction] analysis."); *Oberhellman*, 946 F.2d at 53 ("The requirement of

11

proving an obstruction of justice obviously cannot be satisfied by proof that the contempt proceeding itself, and such ancillary events as the complaint that touched it off, imposed costs, delay, etc. That would read the requirement of proving an obstruction of justice out of the law, for in every case of contempt the contempt proceeding itself imposes the sort of burdens that, if imposed by the act alleged to be contemptuous, would satisfy the requirement of proving an obstruction of justice."). *But see Peoples*, 698 F.3d at 191 ("[W]e have held that the delay and distraction resulting from a court's investigation of misconduct can be considered in determining if a defendant has obstructed the administration of justice."). And though she acknowledges that some of the events the district court relied on—the court's hearing arguments from the parties about how best to proceed with the remainder of the trial, questioning the witness as to whether she saw Ms. Rutledge's gestures, and polling the jury as to whether they saw the gestures—were not concerned with whether she should be held in contempt, she argues that all of those events occurred *after* the district court's summary contempt finding, and thus cannot support it.

We can assume, without deciding, that delays related to contempt proceedings themselves cannot be the basis of a contempt finding, and that all the district court's actions before its summary finding of contempt were focused on determining whether Ms. Rutledge had acted contumaciously. But at the time of that finding, the court surely knew that responding to her misbehavior would require some or all of the remedial steps that followed. Any attempt by a person in the courtroom to communicate with the witness on the stand for the purpose of influencing her testimony will inevitably require

12

"a judicial inquiry—which, it would seem, a trial judge would be compelled to initiate immediately—to determine whether the . . . conduct was observed by a witness or jury." *McGainey*, 37 F.3d at 686. No purpose would be served by requiring the court to conduct those inquiries before expelling the offender from the courtroom and advising her of its contempt finding.

Ms. Rutledge argues that a summary contempt finding was inappropriate before the actual delay and work for the judge had materialized, because the judge could not "consider all of the effects of the defendant's misconduct," Aplt. Br. at 45. We respectfully disagree. The full extent of the misbehavior's effects may be an appropriate consideration for punishment, but the court here delayed determining the punishment anyway.

"Whether [summary contempt] is necessary in a particular case is a matter the Rule wisely leaves to the discretion of the trial court." *United States v. Wilson*, 421 U.S. 309, 316–17 (1975). Ms. Rutledge has not shown that the district court abused its discretion in this case.

### III.    CONCLUSION

We **AFFIRM** Ms. Rutledge's conviction.

Entered for the Court

Harris L Hartz
Circuit Judge

13